IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONNIE S. ESTRADA,

        Plaintiff,

vs.                                           1:18-cv-00582-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Ronnie S. Estrada's Brief in Support of Motion to Remand or Reverse (Doc. 15), which was fully briefed on March 3, 2019. *See* Docs. 19, 20. The parties consented to my entering final judgment in this case. Docs. 3, 5, 6. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge (ALJ) applied the correct legal standards and his decision is supported by substantial evidence. I therefore DENY Mr. Estrada's motion and AFFIRM the Commissioner's decision.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

## III.    Background and Procedural History

Mr. Estrada was born in 1960, has a diploma in construction drafting, and lives with his mother in Albuquerque, New Mexico. AR 33, 61, 170.[3] Mr. Estrada has worked delivering auto parts (sales route driver), as a vault puller (coin box collector), an airport maintenance laborer and a construction worker. AR 33–36, 53–54, 170, 176, 180–86. Mr. Estrada filed an application for Disability Insurance Benefits ("DIB") on October 15, 2014,[4] alleging disability since September 1, 2014, due to bulging discs in his back and spinal arthritis. AR 146–47, 169.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 10-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] The ALJ stated at the hearing and in his decision that the application date was July 10, 2014, with an alleged onset date of July 1, 2014. AR 15, 17, 31. Mr. Estrada adopts this date in his briefing. Doc. 15 at 2. The Disability Determination and Transmittals also note the "filing date" as 7/10/2014. AR 60, 71. Mr. Estrada's application, however, is dated October 15, 2014, alleging disability since September 1, 2014. AR 146–49. There is no indication that plaintiff amended his alleged onset date, or made an application for DIB on July 10, 2014.

The Social Security Administration ("SSA") denied his claim initially and on reconsideration. AR 60–82. Mr. Estrada requested a hearing before an ALJ. AR 90. On March 1, 2017, ALJ James Linehan held a hearing. AR 29–59. ALJ Linehan issued his unfavorable decision on May 18, 2017. AR 12–28.

The ALJ found that Mr. Estrada met the insured status requirements of the Social Security Act through December 31, 2020. AR 17. At step one, the ALJ found that Mr. Estrada had not engaged in substantial, gainful activity since September 1, 2014, his alleged onset date.[5] *Id*. At step two, the ALJ found that Mr. Estrada's degenerative disc disease of the lumbar spine with scoliosis, stenosis, and spondylosis was a severe impairment. AR 18. At step three, the ALJ found that none of Mr. Estrada's impairments, alone or in combination, met or medically equaled a Listing. AR 18. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Estrada's RFC. AR 18–21. The ALJ found Mr. Estrada had the RFC to

> perform light work as defined in 20 CFR 404.1567(b), except the claimant can lift twenty pounds occasionally and lift and carry ten pounds frequently. The claimant can stand and walk alternatively for a total of six hours out of eight hours per day with sitting occurring intermittently throughout the day. The claimant can reach, push and pull with upper extremities up to six hours per eight-hour day. The claimant can use hands for grasping, holding and turning objects up to six hours per eight-hour day. The claimant can climb, stoop, kneel, crouch, crawl and balance up to six hours per eight-hour day.

AR 18.

At step four, the ALJ concluded that Mr. Estrada was capable of performing his past relevant work as a sales route driver, as it was actually performed, and as a coin box collector, as it was actually and generally performed. AR 21–22. Alternatively, the ALJ fund that Mr. Estrada had "acquired work skills from past relevant work that are transferable to other

---

[5] Again, the ALJ states that Mr. Estrada's alleged onset date is July 1, 2014, which is not correct. AR 17. Mr. Estrada's alleged onset date is September 1, 2014. AR 146.

occupations with jobs existing in significant numbers in the national economy," including office helper, booth cashier, and ticket taker.  AR 22–23.  The ALJ thus found Mr. Estrada not disabled at step four and alternatively at step five.  AR 23–24.

Mr. Estrada requested that the Appeals Council review the ALJ's unfavorable decision. AR 143–45.  On April 24, 2018, the Appeals Council denied the request for review.  AR 1–5. Mr. Estrada timely filed his appeal to this Court on June 22, 2018.  Doc. 1.[6]

## IV.    Mr. Estrada's Claims

Mr. Estrada raises two main arguments and several sub-arguments for reversing and remanding this case.  First, Mr. Estrada claims that the ALJ failed to comply with Social Security Ruling ("SSR") 82-62 in finding that Mr. Estrada has the capacity to perform his past relevant work at step four.  Doc. 15 at 1, 4.  In arguing this claim, Mr. Estrada further claims that the ALJ made the following errors:  (a) failed to comply with SSR 16-3p when determining Mr. Estrada's RFC, *id*. at 4–9; (b) failed to include non-exertional impairments in the RFC, *id*. at 9; (c) failed to develop the record regarding his shoulder pain, *id*. at 9–10; (d) failed to obtain a detailed description of the physical and mental demands of Mr. Estrada's past relevant work, *id*. at 10–11; (e) failed to provide specific findings that the RFC would permit a return to his past relevant work, *id*.; and (f) the alternative finding at step five that Mr. Estrada was not disabled pursuant to the Medical-Vocational Rules was in error once he turned 55, *id*. at 12–13.  Second, Mr. Estrada claims that the ALJ failed to comply with the treating physician rule in SSR 96-2p when giving great weight to Mr. Estrada's treating physician's medical opinion.  Doc. 15 at 1, 13–15.  Mr. Estrada's claims are without merit.

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

## V.    Analysis

   A.    <u>The ALJ Properly Evaluated Mr. Estrada's Claim at Step Four</u>.

Step four of the sequential evaluation process is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he [or she] must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id*. (citations omitted). Mr. Estrada contends that the ALJ committed reversible error at each phase of step four.[7]

   1.    *The ALJ Properly Evaluated Mr. Estrada's RFC in the First Phase.*

   a.    Evaluation of Symptoms Under SSR 16-3p

In the first phase of the step four analysis, the ALJ must evaluate a claimant's physical and mental RFC. *Winfrey*, 92 F.3d at 1023. Mr. Estrada contends that the ALJ erred in the first phase by failing to comply with SSR 16-3p. Doc. 15 at 8. Mr. Estrada argues that the ALJ failed to consider the duration, frequency and intensity of his back pain, and the effect his radicular symptoms have on his ability to perform work-related activities. *Id*.

A disability determination must include consideration of all of the individual's symptoms, including pain. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner will not find an individual is disabled based on alleged symptoms alone. *Id*. at *4. When evaluating a disability claimant's complaints of disabling pain, an ALJ must consider and determine:

---

[7] Mr. Estrada also argues in a separate section that the ALJ improperly weighed the opinion of his treating physician. While generally an ALJ weighs the medical opinions in conjunction with formulating the RFC at step four, the Court will follow Mr. Estrada's lead and address the issue separately below.

(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166−67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163−64 (10th Cir. 1987)).[8] The ALJ found that Mr. Estrada had a medically determinable impairment and that that impairment could reasonably be expected to cause the alleged symptoms. AR 19. Mr. Estrada does not challenge these findings. The ALJ further found that Mr. Estrada's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* Mr. Estrada contests this finding, arguing that the ALJ failed to consider certain factors, that the medical evidence supports his complaints of back and leg pain, and that "the ALJ's cursory statement regarding the Plaintiff's credibility does not provide specific reasons as required by SSR 16-3p." Doc. 15 at 8.

In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must examine the entire case record and determine whether the claimant's statements about the intensity, persistence, and limiting effects of these symptoms are consistent with the medical signs and laboratory findings in the record. SSR 16-3p, 2017 WL 5180304, at *4, *5.

---

[8] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e.g., Paulek v. Colvin*, 662 F. App'x. 588, 593−94 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545−46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p. *See id.*; *see also* SSP 16-3p, 2016 WL 1119029, at *6 ("we will evaluate whether the [claimant's] statements [about the intensity, persistence, and limiting effects of pain] are consistent with objective medical evidence and the other evidence").

In examining whether a claimant's statements are consistent, the ALJ will consider a number of factors, including:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7–*8. The ALJ is not required to make a "'formulistic factor-by-factor' recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167. An ALJ must, however, provide the specific evidence he or she relies on in evaluating whether the claimant's allegations of symptoms are consistent with the record as a whole. *Id.* Here, the ALJ considered the relevant factors and determined that Mr. Estrada's pain symptoms were not disabling.

In determining that Mr. Estrada's pain was not disabling, the ALJ reviewed the evidence of Mr. Estrada's daily activities from function reports and Mr. Estrada's testimony. AR 19. The ALJ explained that Mr. Estrada did daily stretching for his back, chores around the house and yard, and could drive and shop for necessities. *Id.*; *see also* AR 33, 190–91, 193. He cared for his mother and her dog, took her where she needed to go, and played with his nephew. AR 19; *see also* AR 191–92, 194. Mr. Estrada had no problems bathing or dressing himself. AR 19; *see also* AR 191. The ALJ also discussed Mr. Estrada's ability to prepare meals, clean, vacuum,

sweep, drive a car, go out alone, watch television, attend football games with his nephew, and visit neighbors.  AR 19; *see also* AR 192, 194.

The ALJ also examined evidence of the location, duration, frequency, and intensity of Mr. Estrada's pain and the factors that precipitated and aggravated his symptoms.  The ALJ discussed Mr. Estrada's complaints of back pain to his health care providers and noted that in 2014 Mr. Estrada received refill prescriptions for pain medications and lumbar facet injections. AR 19–20.  The ALJ reviewed Mr. Estrada's physical therapy visits in 2014, and how this treatment assisted him in performing his daily activities.  *Id.*  The ALJ also discussed Mr. Estrada's foraminotomy[9] in 2015, which improved his leg pain, and that slight symptoms in his right calf improved on a daily basis.  AR 20.  By November 2015, Mr. Estrada reported that physical therapy had provided him relief, and that his morning tightness and pain subsided with walking and moving.  AR 20.  The ALJ discussed Mr. Estrada's visits with his treating physician in July 2016, where Mr. Estrada reported that he was experiencing pain radiating down his leg, and that the pain in his back was worst in the morning after lying down a long time.  AR 20.  In addition, the ALJ noted the type, dosage, effectiveness, and side effects of Mr. Estrada's medications, and that he did not experience any side effects.  AR 19, 20, 39.

In short, the ALJ discussed every factor he was required to consider in deciding that Mr. Estrada's pain was not disabling.  Mr. Estrada does not point to any evidence of other measures—other than those the ALJ discussed—that Mr. Estrada used to treat or relieve his pain.

---

[9] Foraminotomy is surgery that widens the opening in the back where nerve roots leave the spinal canal.  Foraminotomy takes pressure off of the nerve coming out of the spinal column.  This reduces pain.  A foraminotomy can be performed on any level of the spine. https://medlineplus.gov/ency/article/007390.htm (last visited August 29, 2019).

An ALJ is not required to discuss a specific factor if there is no information in the record regarding that factor. SSR 16-3p, 2017 WL 5180304, at *8.

Mr. Estrada criticizes the ALJ for failing to consider other factors such as persistent attempts to find pain relief, and his willingness to try any treatment prescribed, and regular contact with a doctor. Doc. 15 at 8. His criticisms are misplaced. Along with the factors discussed above, the ALJ also discussed Mr. Estrada's testimony at the hearing on March 1, 2017, and that at the time of the hearing, Mr. Estrada was not currently undergoing treatment, "testified that he had not visited Dr. Cherukuri," his treating physician, "since July 2016, and there are no subsequent records of treatment for any source in the case file." AR 19, 20, 38. Mr. Estrada does not dispute these facts or direct the Court to other facts the ALJ should have considered. The ALJ demonstrated that he complied with the requirements of SSR16-3p.

In a conclusory fashion, Mr. Estrada contends that "the ALJ committed a reversable error in failing to consider the duration, frequency and intensity of the Plaintiff's back pain and radicular symptoms have on his ability to perform work-related activities." Doc. 15 at 8. As demonstrated above, however, the ALJ considered and discussed each relevant factor listed in SSR 16-3p. The ALJ described the evidence he relied on in determining that Mr. Estrada's statements concerning the intensity, persistence and limiting effects of his pain were not entirely consistent with the medical evidence and other evidence in the record. I find no error in the ALJ's assessment pursuant to SSR 16-3p.

Finally, Mr. Estrada contends that the RFC also must include consideration of the claimant's nonexertional impairments.[10] Doc. 15 at 9. Aside from the pain symptoms already

_____

[10] Nonexertional impairments may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric

discussed, Mr. Estrada fails to explain what nonexertional impairments should have been included in the RFC. He presents no legal authority or argument that establishes how or why other nonexertional impairments have limited his ability to perform work-related activities. To meet his burden in this Court, Mr. Estrada must not only "point[ ] to evidence that [he] claims the ALJ failed to discuss," but also "say why it was significantly probative." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014). The Court will not consider this issue because it has not been adequately briefed. *Keyes-Zachary*, 695 F.3d at 1161 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal.")).

The ALJ considered and discussed all of the requisite factors. The ALJ's assessment that Mr. Estrada's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record is supported by substantial evidence. Reversal is not warranted pursuant to SSR 16-3p.

### b. Failure to Develop the Record

Mr. Estrada contends that the ALJ failed to develop the record with regard to his right shoulder pain and reaching limitations and, consequently, failed to consider this condition when determining the RFC. Doc. 15 at 9. Specifically, Mr. Estrada argues that the ALJ should have ordered a consultative exam. *Id.* Although generally the burden to prove disability is on the claimant, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (internal citation and quotation omitted). Generally, an ALJ should order

---

disorders; chronic alcoholism; drug dependence; dizziness; and pain. *Williams v. Bowen*, 844 F.2d 748, 752 (10th Cir. 1988) (citation omitted).

a consultative exam where there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are required to explain a diagnosis already contained in the record. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997); *see also* 20 C.F.R. § 416.919a (describing the situations that may require a consultative examination). It is not the duty of the ALJ, however, to act as the claimant's advocate. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (emphasizing that it is not the ALJ's duty to be the claimant's advocate).

While there is some evidence in the record regarding Mr. Estrada's shoulder, the ALJ did not have an obligation to order a consultative examination. Mr. Estrada testified that his right shoulder hurt when he lifted his arm to a certain height or held something out at arm's length. AR 50–51. An X-ray of his right shoulder on March 7, 2017, showed "[m]ild degenerative change of the acromioclavicular joint." AR 524. This medical evidence is neither in direct conflict with other medical evidence nor is it inconclusive. While Mr. Estrada testified that he had some shoulder pain, he further testified that he did not have any functional limitations as a result of his shoulder impairment. AR 40–41, 50–51. Mr. Estrada does not make a sufficient showing that further testing or additional tests would explain the diagnosis of mild degrative change of the acromioclavicular joint already contained in the record. Reversal is not warranted for a failure to develop the record.[11]

---

[11] In the concluding sentence of his failure-to-develop argument, Mr. Estrada asserts that the "ALJ committed a reversable error in failing to include the Plaintiff's right shoulder pain and reaching limitations in the RFC." Doc. 15 at 9–10. This argument is without merit. First, Mr. Estrada did not present sufficient factual or legal support for including his shoulder issues in the RFC. Second, the ALJ properly assessed Mr. Estrada's pain symptoms, as discussed above. Third, Mr. Estrada testified that he did not have any problems "using [his] arms out in front of [him], reaching, pushing, [or] pulling." AR 40–41. Mr. Estrada does not point to any authority that raising an arm to a certain height or holding an object at arm's length is a required work-related activity for the past relevant work that the ALJ determined that Mr. Estrada still could

2. *The ALJ Properly Assessed Mr. Estrada's Past Relevant Work in the Second Phase.*

In the second phase of step four, the ALJ must determine the physical and mental demands of the claimant's past relevant work.[12] *Winfrey*, 92 F.3d at 1023. Mr. Estrada contends that the ALJ erred at the second phase by failing to provide specific findings of fact as to the physical and mental demands of his past jobs as required by SSR 82-62. Doc. 15 at 10. He first argues that the ALJ failed to obtain a detailed description of the physical and mental demands of the employment positions of sales route driver and coin box collector. *Id*. at 11.

At phase two, "an ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1024. To make this finding, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." SSR 82-62, 1982 WL 31386, at *3. The information about work demands may be obtained from the claimant, his employer, or another informed source. *Id*.

The ALJ obtained adequate descriptions of the physical demands of Mr. Estrada's past work.[13] During the hearing, the ALJ asked Mr. Estrada about the physical demands of his work

---

perform. Accordingly, the ALJ did not err by not including issues specific to Mr. Estrada's right shoulder in the RFC.

[12] The term "past relevant work" means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job, and it must qualify as substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565.

[13] Mr. Estrada does not allege any mental impairments. Accordingly, the ALJ only obtained information about the physical demands of Mr. Estrada's past work because those are the demands that are relevant.

as a sales route driver and coin box collector.[14]  AR 33–35.  Mr. Estrada explained that as a sales

route driver, he delivered auto parts in and out of town, driving a van.  AR 33–34.  He would lift

and carry small parts of up to about 15 pounds.  AR 34.  Mr. Estrada testified that he is still able

to drive.  AR 33.  As a coin box collector (Mr. Estrada called this a "vault puller"), Mr. Estrada

"took out the vaults from the busses when they came in and put a new one in there."  AR 34.

Mr. Estrada would lift and carry about 15 to 20 pounds at that job.  AR 35.  Mr. Estrada also

described his job duties on a Work History Report.  AR 178–86.  In the Work History Report,

Mr. Estrada stated that as a sales route driver he would walk for about three hours a day, sit for

one hour a day, and stand for three hours a day.  AR 180–81.  As a coin box collector Mr.

Estrada would walk about one hour a day, sit for one hour a day, and stand for six hours a day.

AR 182.

　　　　In addition to gathering facts about the work a claimant has performed in the past, SSR

82-62 requires an ALJ to make specific findings of fact regarding the physical and mental

demands of past relevant work.  *See* SSR 82-62, 1982 WL 31386, at *4.  The Tenth Circuit has

held that an ALJ may properly rely upon vocational expert (VE) testimony in making these

findings at phase two and phase three of step four.  *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th

Cir. 2003).  The ALJ may not, however, delegate the step-four analysis to the VE.  But the ALJ

may rely on information supplied by the VE regarding the demands of a claimant's past relevant

work and whether a person with the claimant's RFC could meet those demands, and the ALJ

may accept the VE's opinions.  *Id*.  The critical distinction is whether the ALJ relied upon the

VE testimony in making the findings or whether the ALJ delegated the phase two and phase

---

[14] Because the ALJ determined that Mr. Estrada could perform his past work as a sales route
driver and coin box collector, the physical demands of Mr. Estrada's other jobs are not relevant,
and the Court will not discuss them.

three findings to the VE. *Id.* "While the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Winfrey*, 92 F. 3d at 1025. Where an ALJ made the phase two and phase three findings and quoted the VE testimony approvingly in support of those findings, the ALJ properly relied upon the VE testimony. *Doyal*, 331 F.3d at 761.

The ALJ made on-the-record findings regarding the mental and physical demands of Mr. Estrada's past relevant work. The ALJ explained that "[t]he vocational expert examined the claimant's past relevant work and compared that to the Dictionary of Occupational Titles (DOT) along with the specific vocational preparation (SVP), exertional level, and classification." AR 22. The ALJ specifically stated that he took the VE's testimony into consideration when identifying the claimant's past relevant work. *Id.* In his decision, the ALJ—not the VE— identified Mr. Estrada's past relevant work as a sales route driver, coin box collector, airport maintenance laborer, and construction worker II, and determined the DOT exertional levels associated with each of these positions as well as the exertional level of each job as it was actually performed (if different from the DOT level). *Id.* Thus, although the ALJ relied on the VE's testimony, the ALJ did not delegate the step four analysis to the VE.

Mr. Estrada argues that "the ALJ should have obtained information regarding the ability to stand and walk alternatively for a total of six hours out of eight hours per day with sitting occurring intermittently throughout the day." Doc. 15 at 11. At the hearing, the ALJ asked the VE whether a hypothetical person with Mr. Estrada's limitations—including the ability to "stand and walk alternatively for a total of six hours per day with sitting occurring intermittently throughout the day"—could perform Mr. Estrada's past work either as actually performed or

generally performed.  AR 55.  The VE testified that this hypothetical person could perform the sales route driver job as it was actually performed (at a light exertional level), and coin box collector as it was actually and generally performed.  AR 53–54.  By doing so, the ALJ determined the demands for standing, walking, and sitting for Mr. Estrada's past relevant work. The ALJ fulfilled his obligation to obtain specific descriptions of the physical and mental demands of Mr. Estrada's past relevant work at phase two of step four.

### 3. The ALJ Properly Assessed Mr. Estrada's Ability to Perform His Past Relevant Work in Phase Three.

In the third phase of step four, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  *Winfrey*, 92 F.3d at 1023.  The ALJ compared Mr. Estrada's RFC with the physical and mental demands of his past relevant work in accordance with SSR 82-62.  *See* SSR 82-62, 1982 WL 31386, *2–3.  The ALJ stated,

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work and using the testimony of the vocational expert, I find that the claimant is able to perform the job of sales route driver as actually performed and the job of coin box collector as generally and actually performed.

AR 22.  The Court will take the ALJ at his word that he performed this comparison.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").  The ALJ made specific findings of fact in determining that Mr. Estrada could return to his past relevant work and was, therefore, not disabled.  *See* 20 C.F.R. § 404.1520(f) (a claimant capable of performing past relevant work is not disabled within the meaning of the Act).

The ALJ made specific findings at each phase of step four. The ALJ did not delegate the analysis to the VE in concluding that Mr. Estrada could perform his past relevant work. Instead, he considered the VE's testimony in making his own findings. There is nothing improper about this. "An ALJ may rely on information supplied by the VE at step four." *Doyal*, 331 F.3d at 761 (internal quotations and citation omitted); *see also Best-Willie v. Colvin*, 514 F. App'x 728, 736–38 (10th Cir. 2013). The ALJ did not commit reversible error at step four.

### B. The ALJ Properly Evaluated the Opinion of Mr. Estrada's Treating Physician.

Mr. Estrada complains that the ALJ failed to follow SSR 96-2p when giving great weight to his treating physician's medical opinion. Doc. 15 at 13. SSR 96-2p is the policy interpretation explaining the terms used in the regulations on evaluating medical opinions. SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).[15] Treating physicians may offer a medical opinion with regard to the claimant's symptoms, diagnosis, and prognosis, as well as work-related physical and mental limitations. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (citing 20 C.F.R. § 404.1527(a)(2)). A "medical opinion" is a statement "from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Pursuant to the "treating physician rule,"[16] "the Commissioner will generally give more weight

---

[15] The regulation applicable to this case is 20 C.F.R. § 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017." 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

[16] Although the Social Security Administration has rescinded the treating physician rule, that rescission only applies to claims filed on or after March 27, 2017. *See* SSR 96-2P, 2017 WL

to medical opinions from treating sources than those from non-treating sources." *Langley*, 373

F.3d at 1119; 20 C.F.R § 404.1527(c)(2).

When presented with a treating medical source opinion, the ALJ first must determine

whether the opinion is entitled to "controlling weight," and if not, "treating source medical

opinions are still entitled to deference and must be weighted using all of the factors provided in

§ 404.1527." *Id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; (3) the degree to
> which the physician's opinion is supported by relevant evidence; (4) consistency
> between the opinion and the record as a whole; (5) whether or not the physician is
> a specialist in the area upon which an opinion is rendered; and (6) other factors
> brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d at 1301 (10th Cir. 2003); *see also* 20 C.F.R. § 404.1527(c)(2−6).

While an ALJ is not required to discuss each factor, an ALJ must give good reasons for the

weight assigned to a treating physician's opinion, reasons "that are sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotations

and citations omitted).

On February 11, 2016, Dr. Mark Crawford opined that Mr. Estrada had reached

maximum medical improvement ("MMI") with a functional capacity to perform "light duty

work." AR 498. While the ALJ did not expressly give Dr. Crawford's opinion "controlling

weight," he gave Dr. Crawford's opinion "great weight." AR 21. The ALJ explained that he

gave Dr. Crawford's opinion great weight because the opinion was related to his specialty, and

---

3928298 (March 27, 2017); SSR 96-2P, 2017 WL 3928305 (March 27, 2017). As Mr. Estrada's
claim was filed in October 2014, the treating physician rule still applies.

because of Dr. Crawford's long treatment relationship with Mr. Estrada. *Id.* Although the ALJ did not discuss all of the relevant factors, he gave good reasons that are sufficiently specific to make clear the weight he gave Dr. Crawford's medical opinion and the reasons for that weight.

Mr. Estrada contends that the ALJ failed to "follow the process when evaluating and weighing opinions from treating sources, specifically the ALJ failed to describe how the functional capacity evaluation was supported by medical[ly] acceptable techniques and how it is consistent with the substantial evidence in the record." Doc. 15 at 27. Mr. Estrada is essentially complaining that the ALJ failed to specifically assess whether he gave Dr. Crawford's opinion controlling weight. A medical source opinion is entitled to "controlling weight," if the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see also Langley*, 373 F.3d at 1119. But "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

In this case, although the ALJ did not expressly analyze whether Dr. Crawford's opinion should be afforded controlling weight, he implicitly declined to give it controlling weight by giving the opinion great weight. *See Mays*, 739 F.3d at 575. The ALJ articulated good reasons for weighing Dr. Crawford's opinion favorably, which facilitated meaningful judicial review. Further, as the Commissioner points out, the substantial evidence in the record supports the ALJ's conclusion that Mr. Estrada can perform light work. Doc. 19 at 14–15. Both state agency consultants found that Mr. Estrada was able to perform light work consistent with the ALJ's RFC, Dr. Crawford's opinion supports the RFC, as does the record as a whole. AR 20–21. Furthermore, because the ALJ did not weigh Dr. Crawford's opinion unfavorably in determining

Mr. Estrada's RFC and because the medical evidence supports the ALJ's RFC, it was less important for the ALJ to formally complete the two-step process for determining whether Dr. Crawford's opinion was entitled to controlling weight. *See Howard*, 379 F.3d at 947. The ALJ did not commit reversible error in assessing the weight he gave to Dr. Crawford's opinion.

Mr. Estrada also argues that it is unclear from Dr. Crawford's opinion which definition of "light work" he was using when he opined that Mr. Estrada had reached his "MMI" and was capable of "light duty work." Doc. 15 at 14–15. Mr. Estrada points out that between March 4, 2014 and July 29, 2014, he was put on "light work" restrictions, which restricted him to lifting no more than fifteen pounds; no prolonged standing/walking longer than thirty minutes per hour; no pushing/pulling over twenty-five pounds of force; and should be sitting twenty-five percent of the time. Doc. 15 at 15. Mr. Estrada also notes that New Mexico statutes define light work as:

> the ability to lift up to twenty pounds occasionally or up to ten pounds frequently. Even though the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant degree or when it involves sitting most of the time with a degree of pushing and pulling of arm or leg controls or both.

N.M.S.A. § 52-1-26.4(C)(3). Mr. Estrada suggests that because it's not clear whether Dr. Crawford used New Mexico's definition of "light work" or the light work restrictions imposed in 2014, remand is required. Doc. 15 at 15; Doc. 20 at 2.

The Commissioner is correct that the New Mexico statutory definition of light work is nearly identical to the agency's definition of light work. Doc. 19 at 15. Light work is defined in the regulations as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). Because of the similarity in the definitions, whether Dr. Crawford used New Mexico's definition is of no consequence. Furthermore, the "light work" restrictions imposed on Mr. Estrada in 2014 were not imposed by Dr. Crawford, *see* AR 277, and were imposed before Mr. Estrada's foraminotomy, which improved Mr. Estrada's condition considerably, *see* AR 488, 490, 492, 495. In addition, Dr. Crawford's opinion specifically referenced Mr. Estrada's "functional capacity examination," which was performed sometime between November 12, 2015, when Dr. Crawford set Mr. Estrada up for a functional capacity evaluation, and February 11, 2016, when Mr. Estrada came in to discuss the results of his functional capacity examination. *See* AR 494, 498. Thus, although the functional capacity exam itself is not included in the record, this sequence of events makes clear that Dr. Crawford was not referring to the 2014 light duty work restrictions when he opined that Mr. Estrada was able to perform light duty work. *See* AR 497. Finally, Mr. Estrada does not point to any authority that would require an ALJ to determine whether a physician is using a definition of "light duty work" that differs from the statutory or regulatory definitions. Accordingly, the ALJ's failure to expressly discuss Dr. Crawford's definition of "light duty work" is not reversible error.

The ALJ fulfilled his obligation in determining the weight he gave to Mr. Estrada's treating physician's opinion, and reversal is not warranted pursuant to SSR 96-2p.

### C. The ALJ's Error at Step Five is Harmless

While the ALJ determined that Mr. Estrada could return to his past relevant work and was, therefore, not disabled at step four, he alternatively found that "a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.13 and Rule 202.07." AR 23. Accordingly, the ALJ determined that Mr. Estrada could perform other occupations that exist in

significant numbers in the national economy, such as office helper, booth cashier, and ticket taker.  *Id.*

Mr. Estrada contends that when he turned 55, a decision of disabled is warranted pursuant to Medical-Vocational Rule 202.08.  Doc. 15 at 12–13.  The Commissioner concedes that while Mr. Estrada would have been capable of the alternative jobs until age 55, he is correct that he would not be capable of these jobs after his 55th birthday without transferrable skills.  Doc. 10 at 21, n.3.  The Commissioner contends, however, that the ALJ's decision at step five is harmless because the ALJ "made supportable step four findings that [Mr. Estrada] could return to his past light work."  *Id.*  I agree with the Commissioner.

The Tenth Circuit has indicated that a court may invoke a harmless error analysis on behalf of the Commissioner where "the record is not overly long or complex, harmlessness is not debatable, and reversal would result in futile and costly proceedings."  *Seever v. Barnhart*, 188 F. App'x 747, 752 n.1 (10th Cir. 2006).  Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Here, the ALJ properly found that Mr. Estrada could return to his past relevant work at step four.  The fact that the ALJ presented an alternative reason for finding Mr. Estrada not disabled at step five does not upset his step-four findings.  Consequently, the alternative finding at step five is harmless error, and remand is not warranted on this basis.

## VI.    Conclusion

For the reasons stated above, I find the ALJ applied the correct legal standards and his decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that Ronnie S. Estrada's Motion to Remand or Reverse

(Doc. 15) is DENIED and the Commissioner's decision is AFFIRMED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent